SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

-----------------------------------------------------------------X        Index No.:

DEVON G. CAMPBELL,

      Plaintiff,

      -against-                                                                       **<u>COMPLAINT AND JURY</u>**

C.R. BARD, INC.,                                                                      **<u>DEMAND</u>**

      Defendant.

-----------------------------------------------------------------X

Plaintiff, Devon Campbell, by his attorney, MARC J. BERN & PARTNERS LLP, complaining of the Defendant, upon information and belief, respectfully alleges upon information and belief:

<u>**PARTIES**</u>

1.    Plaintiff, Devon Campbell, is an individual and resident of the State of New York.

2.    Plaintiff resides at 170-42 130th Avenue, Apt.# 6G Bldg 10-B, Jamaica, NY 11434.

3.    Defendant, C.R. Bard Inc., ("Bard"), is a corporation organized and incorporated under the laws of New Jersey, with its principal place of business located at One Johnson & Johnson Plaza New Brunswick, New Jersey 08933.

4.    Defendant Bard has registered agents within the State of New York, Located at

#1601, 601 W 26th St, New York, NY 10001.

5.    Defendant Bard derives substantial revenue from sales directed at and occurring within

the State of New York, including the PerFix™ Plug and the PerFix™ Light Plug, subjects of the present action.

6.  Defendants are and have been at all times pertinent to this proceeding, engaged in the design and manufacturing of medical technologies used by surgeons to treat a variety of conditions, including, but not limited to, hernia repairs. The Defendant Corporation designed, manufactured, packaged, labeled, marketed, sold, and distributed the Hernia Mesh product at issue in this lawsuit.

7.  The Defendant, C.R. Bard, Inc., will be referred to as "Defendant."

## JURISTICTION AND VENUE

8.  This Court has personal jurisdiction over Defendant Bard, pursuant to C.P.L.R.§302(a)(1), as nondomiciliary corporation transacting business, soliciting business, and deriving substantial revenue within the State of New York.

9.  Jurisdiction is proper in this Court pursuant to C.P.L.R. § 302(a)(3) because a substantial part of the events and omissions giving rise to Plaintiff's causes of action occurred in the State of New York. Specifically, Plaintiff is a New York resident, Plaintiff's product was purchased in New York, Plaintiff's product was implanted in New York, and Plaintiff's injury occurred in New York.

10. Further, jurisdiction is proper in this Court pursuant to C.P.L.R. § 302(a)(3), by virtue of the fact that Defendant's products are produced in, sold to, and implanted in individuals in the State of New York, thereby subjecting Defendant to personal jurisdiction in this action. Plaintiff's claim arises from Defendant's presence and transactions in New York. Defendant's activity with New York were purposeful and are substantially related to Plaintiff's injuries, which occurred in New York. Defendant at all times relevant, regularly conducted and solicited, and continue to conduct and solicit, business in the State of New York through its agents, servants and employees,

2

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 3 of 30 PAGEID #: 174

and because Defendant was engaged, and continue to engage, in marketing, distributing, promoting, and/or selling, either directly or indirectly, and/or through third parties or related entities, products, including but not limited to hernia mesh products, in New York. Defendant at all times relevant engage, and continue to engage, in a persistent course of conduct in the State of New York. Defendant derives substantial revenue from goods used or consumed or services rendered in the State of New York. Defendant expects or should reasonably expect their actions and course of conduct to have consequences in the State of New York and derive substantial revenue from interstate and/or international commerce.

11.    Defendant Bard actively sells, markets and promotes their Hernia Mesh Products (PerFix™ Plug and PerFix™ Light Plug) to physicians and consumers in this state on a regular and consistent basis.

12.    Defendant systematically availed themselves of the State of New York by conducting regular and sustained business and engaging in substantial commerce and business activity in New York, including without limitation researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling, and/or introducing into interstate commerce in the State of New York, either directly or indirectly, its products, including hernia mesh products. Defendant should expect that their acts would have consequences within the United States, specifically, in the State of New York. Plaintiff's claims arise from and relate to Defendant's purposeful availment of the State of New York because Defendant's wrongful conduct in researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling, hernia mesh products, took place, in whole

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 4 of 30 PAGEID #: 175

or in part, in the State of New York. Therefore, the claims of this New York Plaintiff relate to and arise from Defendant's explicit contacts and purposeful availment of the State of New York.

13.     Venue is proper in this Court pursuant to C.P.L.R. § 503, because Plaintiff resides, and has at all relevant times resided, in the State of New York, County of Montgomery.

14.     Venue is proper in this Court pursuant to C.P.L.R. § 503 because Defendant is a corporation authorized to transact business in the State of New York.

15.     Venue is proper pursuant to C.P.L.R § 509.

## FACTUAL BACKGROUND

### I.     HERNIAS, HERNIA MESH PRODUCTS AND KNOWN ALTERNATIVES

16.     A hernia is a medical condition caused by the penetration of fatty tissue, intestine, or organs through a weakened or compromised location in muscle of connective tissue.

17.     The most common types of hernias are: inguinal, hiatal, umbilical, ventral, incisional, and femoral hernias, most occurring near the abdominal wall.

18.     Hernias sometimes manifest as visibly observable protrusions or bulges, and can cause the patient pain, discomfort, and decreased mobility.

19.     Hernias can be treated surgically, either by laparoscopic or open repair surgical procedures.

20.     Hernia repairs are common surgeries, and are performed more than one-million times per year in the U.S. Of all hernia repair surgeries, inguinal hernias account for approximately 80% of all hernia surgeries (an excess of 800,000 performed annually.)

21.     The surgical mesh used to execute hernia repairs to damaged tissue can be constructed from synthetic or biologic materials and tissue. Synthetic surgical mesh is made of knitted or non-knitted

4

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 5 of 30 PAGEID #: 176

sheets that can be absorbable, non-porous, or a combination of absorbable and nonabsorbent in composition.

22.   Surgical mesh can be introduced to the hernia site to strengthen the repair, in hopes of reducing the likelihood of recurrence.

23.   Hernia mesh made from animal byproduct is usually derived from animal tissue sourced from skin or intestine and is designed to be absorbed into the human body upon use.

24.   Non-absorbable mesh, made from synthetic materials, is intended to remain within the body permanently.

25.   The most common injuries caused by hernia surgeries using hernia mesh are: pain, infection, adhesion of scar tissue sticking together, blockages that obstruct intestines, internal bleeding, fistula between organs (abnormal organ connection or fusion), serenoma or fluid build-up at site, and perforation of other organs.

26.   The hernia mesh introduced to the body can cause serious injuries, including migration of the mesh and mesh shrinkage or contraction as well as the aforementioned conditions.

27.   Additional defects and known side effects of hernia mesh, as used for reinforcement and strengthening of hernia repairs, include:

> a.   Mesh materials, as used, react to human tissues, organs and other body contents adversely.
> b.   Mesh materials can harbor or cultivate infections, which can affect surrounding areas, tissues, and organs.
> c.   Mesh material abrades bodily tissue, and can cause erosion of tissue and organs surrounding the placement of the mesh implant.
> d.   Mesh components routinely fail, malfunction or lose efficacy, resulting in serious adverse health implications, often requiring subsequent revision or removal surgery.
> e.   Mesh material causes significant injury, extending to perforation of surrounding tissue and/or organs, adhesion to other tissue and/or organs, and nerve damage.

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 6 of 30 PAGEID #: 177

    f.    Mesh material is intended to be rounded and reinforced to be safely cut, but when mesh is defective, it can become frayed, sharp, and protruding.

    g.    Unreasonable risk of malfunction, injury and health consequences, such as: severe chronic pain, infection, adhesion, intestinal blockages, migration of mesh, contraction/shrinkage of mesh, and requirement of repeat surgical intervention.

28.    In April of 2016, the FDA wrote and published an article on hernia mesh implants;

> "Many complications related to hernia repair with surgical mesh that have been reported to the FDA have been associated with recalled mesh products that are no longer on the market. Pain, infection, recurrence, adhesion, obstruction, and perforation are the most common complications associated with recalled mesh."

29.    Safer and more effective alternatives to hernia mesh exist and have existed since the introduction of hernia mesh products into the market. These include the Shouldice Repair, McVay Repair, Bassini Repair, and Desarda Repair.

## II.    DEFENDANT BARD, INC: PERFIX™ PLUG

30.    Defendant Bard's PerFix™ Plug was designed, patented, manufactured, labeled, packaged, marketed, sold, and distributed by Defendant at all relevant times herein. Defendant was responsible for the research, design, development, testing, manufacture, production, marketing, packaging, promotion, distribution, and sale of the PerFix™ Plug, as well as providing the warnings and instructions concerning the product.

31.    Among the intended purposed for which Defendant designed, manufactured, marketed, and sold the PerFix™ Plug was for the use by surgeons for hernia repair surgeries- the purpose for which the PerFix™ Plug was implanted in the Plaintiff, Devon Campbell.

32.    Defendant's hernia mesh products are designed, intended, and utilized for permanent implantation in the human body.

33.    The PerFix™ Plug is a "low-profile, large pore, monofilament polypropylene/ePTFE"

6

INDEX NO. 151747/2018
RECEIVED NYSCEF: 02/27/2018

prosthesis, used for laparoscopic ventral hernia repair.

34.     Among Defendant's advertising materials for the PerFix™ Plug are statements including: "Soft, compliant, biocompatible knit structure," "Efficient," "Effective," and "Proven."

35.     The PerFix™ Plug is advertised as designed to encourage rapid tissue ingrowth for a strong repair and leave less foreign material in your body.

36.     Defendant Bard's advertising material, found on their website at https://www.crbard.com/CRBard/media/ProductAssets/DavolInc/PF10146/en-US/q5useahbw78ghyu95b0v6ylacerl0stn.pdf promotes the PerFix™ Plug and shows multiple photos of the knit mesh structure, the mesh itself as well as a complete list of all hernia mesh products in the same "family".

37.     Defendant represented to Plaintiff and Plaintiff's physicians that the PerFix™ Plug was safe and effective for hernia repair and for permanent implantation in humans.

38.     Defendant applied for U.S. Food and Drug Administration ("FDA") clearance to market their PerFix™ Plug under Section 510(k) of the Medical Device Amendment.

39.     Section 510(k) allows for the marketing of medical devices, so long as the medical device or material is deemed substantially equivalent to other legally marketed predicate devices or materials without predicate devices without formal review for the safety of efficacy of the device.

40.     Defendant obtained clearance by a 510(k) application, submitted on October 5, 2006, and approved by the FDA on October 23, 2006 as 510(k) No: K061754 for the use in the reconstruction of soft tissue deficiencies, such as the repair of hernias.

41.     In order to get approved, Bard claimed the PerFix™ Plug is substantially equivalent to the Composix® E/X and Bard Large Pore Soft™ Mesh.

42.     In promotional and information materials about the PerFix™ Plug on Defendant's website,

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 8 of 30  PAGEID #: 179

the PerFix™ Plug, is advertised as "just one of a complete family of hernia repair products," the brochure then goes on to list all hernia repair products Defendant sells that are available to the public. Included in the list are Tissue Regeneration Product, Specialty Products and Fixation Products.

43.     The FDA maintains an active compulsory database ("MAUDE DATABASE") of adverse incidents reported by medical providers regarding pharmaceutical implants and devices.

44.     Every year, the FDA received hundreds of medical device reports ("MDRs") of suspected device-associated deaths, serious injuries, and malfunctions to contribute to the medical community's risk-benefit analysis of the use of certain devices.

45.     MAUDE reports have been published documenting serious malfunctions of Defendant's PerFix™ Plug.

46.     Among the MAUDE reports are documented instances of redness, severe abdominal pain, infection, incorporation into muscle layer, vomiting, and adhesions of the small intestine adherent to the underside of the mesh.

### III.     DEFENDANT BARD, INC: PERFIX™ LIGHT PLUG

47.     Defendant Bard's PerFix™ Light Plug was designed, patented, manufactured, labeled, packaged, marketed, sold, and distributed by Defendants at all relevant times herein. Defendant was responsible for the research, design, development, testing, manufacture, production, marketing, packaging, promotion, distribution, and sale of the PerFix™ Light Plug, as well as providing the warnings and instructions concerning the product.

48.     The PerFix™ Light Plug is a "lighter-weight version of the proven PerFix™ Plug, for use when a reduced amount of material is indicated."

49.     The PerFix™ Light Plug is made with monofilament polypropylene material that is a type of cheap plastic that degrades and erodes through tissue once implanted.

50.     The PerFix™ Light Plug product comes in a "dynamic" design that is intended to conform to any defect.

51.     The PerFix™ Light Plug has inner petals and an only patch that can be trimmed for optimal customization.

52.     Among the intended purposes for which Defendant designed, manufactured, marketed, and sold, PerFix™ Light Plug was for the use by surgeons for hernia repair surgeries- the purpose for which the PerFix™ Light Plug was implanted in Plaintiff, Devon Campbell.

53.     Defendant Bard's Hernia Mesh Products are designed, intended, and utilized for permanent implantation in the human body. The PerFix™ Light Plug was designed, intended and utilized for permanent use of reinforcing soft-tissue.

54.     Defendant Bard's advertising material, found on their website at https://www.crbard.com/Davol/en-us/products/perfix-light-plug promotes the PerFix™ Light Plug as "ideal for use in a tension-free preperitoneal repair technique where a lighter-weight mesh and reduced amount of implanted material is indicated."

55.     Defendant Bard represented to Plaintiff, Devon Campbell, and Plaintiff's physicians that the PerFix™ Light Plug was safe and effective products for hernia repair and for permanent implantation in humans.

56.     Defendant Bard applied for U.S. Food and Drug Administration ("FDA") clearance to market PerFix™ Light Plug under Section 510(k) of the Medical Device Amendment.

57.     Section 510(k) allows for the marketing of medical devices, so long as the medical device or material is deemed substantially equivalent to other legally marketed predicate devices or

9

materials without predicate devices without formal review for the safety of efficacy of the device. PerFix™ Light Plug was deemed approved based on substantial similarities between the PerFix™ Plug, Bard® Soft Mesh and other predicate devices.

58.     Defendant Bard first obtained clearance by a 510(k) application, approved by the FDA on December 8, 2009 as 510(k) No: K092032 for use in soft-tissue deficiencies, including hernia repairs.

59.     The FDA maintains an active compulsory database ("MAUDE DATABASE") of adverse incidents reported by medical providers regarding pharmaceutical implants and devices. Every year, the FDA received hundreds of medical device reports ("MDRs") of suspected device-associated deaths, serious injuries, and malfunctions to contribute to the medical community's risk-benefit analysis of the use of certain devices.

60.     MAUDE reports have been published documenting serious malfunctions of Bard's PerFix™ Light Plug.

61.     Among the MAUDE reports are documented instances of adhesions, obstruction, fistula, and infections.

62.     On or about October 08, 2014, Bard Defendants sent, via FedEx next day delivery to all customers, a letter announcing the recall of the mesh product due to an error in labelling. The letter detailed the actions each customer had to take depending on the varying situations, i.e. if the product was still in inventory, if the product was already implanted in a patient and so on.  A voluntary product recall on their PerFix™ Light Plug from the global market was initiated due the mislabeling of packages.

63.     The 2014 recall of the PerFix™ Light Plug was terminated on or about November 7, 2014.

## IV.    PLAINTIFF SPECIFIC FACTS

64.     At all times relevant to this action Plaintiff was and is a resident of the state of New York, residing at 170-42 130th Avenue, Apt.# 6G Bldg 10-B, Jamaica, NY 11434.

65.     On May 9, 2011 Plaintiff underwent a right inguinal hernia repair procedure performed by Alfredo S. Wong, M.D. to introduce Defendant's PerFix™ Plug to Plaintiff's peritoneal cavity to reinforce tissue affected by the hernia.

66.     The PerFix™ Plug, manufactured and sold by Defendant Bard, was used for Plaintiff's surgery. Specifically, a Large PerFix™ Plug, 1.6" x 1.90" (4.1cm x 4.8cm), Lot No.: 0112770, positively identified on surgical and operative reports prepared by Wong, was implanted into Plaintiff.

67.     On April 2, 2013, Plaintiff underwent a subsequent surgery performed by Natalie Hubbard, M.D., to repair a recurrent right side incarcerated femoral hernia.

68.     It was during this surgery that a PerFix™ Light Plug, manufactured and sold by Defendant Bard, was implanted into Plaintiff. Specifically, a Medium mesh PerFix™ Light Plug, Lot No: HUWE2268, positively identified on surgical and operative reports prepared by Hubbard, was implanted into Plaintiff.

69.     To this day, both Defendant Bard's PerFix™ Plug and PerFix™ Light Plug remain implanted in Plaintiff. Plaintiff has experienced and continues to experience stomach pain and recurring hernias since the multiple procedures and hernia mesh implants. Plaintiff has difficulty digesting nutrients he consumes without pain and bloating. These injuries were not present before the implantation of Defendant's mesh products.

70.     As a direct and proximate result of the implanted mesh products into his body, Plaintiff suffered, is suffering, and/or will continue to suffer the abovementioned injuries, including the risk

of malfunction, decreased efficacy, recurrent hernia, perforation of tissue and/or organs, adherence to tissue/organs, infection, nerve damage, subsequent surgeries, and other complications.

71.     As a direct and proximate result of the wrongful acts and omissions of Defendant, Plaintiff has suffered economic damages, severe and possibly permanent injuries, and emotional distress. Plaintiff has also endured and continues to suffer the mental anguish and psychological trauma of living with this defective product implanted in his body.

### COUNT I
### Strict Liability- Defective Design and Manufacture

72.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

73.     Defendant placed their hernia mesh products, defined herein, into the stream of commerce with the actual or constructive knowledge that it would be used without inspection for defects.

74.     Defendant's hernia mesh products were defective in their manufacture.

75.     Defendant's hernia mesh products were defective by design.

76.     Specifically, the woven design of both the PerFix™ Plug and the PerFix™ Light Plug creates small pores (holes) throughout the mesh.

77.     Nerves grow into these pores and attach to the mesh soon after implant.

78.     As the mesh erodes and moves through the inguinal canal, it pulls and stretches the nerves attached to it.

79.     The nerves stretching is what is causing debilitating pain.

80.     Additionally, pain caused from nerves stretching is essentially unable to be treatable.

81.     Because polypropylene causes so many complications, many manufacturers tried to use less polypropylene (lighter weight) in hopes of reducing complications.

12

82.     Both heavy-weight and light-weight polypropylene hernia mesh are problematic, proving defective in design.

83.     Because of defects in the Defendant's hernia mesh products, it is, and at all times material hereto were, unreasonably dangerous.

84.     Alternative designs for hernia mesh products and/or procedures existed that were and/or are less dangerous and equally, it not more, effective.

85.     Defendant owed a duty to Plaintiff, Plaintiff's physicians, and others in the medical community and other foreseeable Plaintiffs. Defendant breached that duty by marketing a product that was not reasonable safe.

86.     This defective design was a substantial factor in causing Plaintiff's injuries.

87.     Even through the exercise of reasonable care, Plaintiff and Plaintiffs physicians could not have discovered the defect and perceived its danger.

88.     Plaintiff would not have been able to avert his injury or damages through the exercise of reasonable care.

89.     Defendants' hernia mesh products left the Defendants hand in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use.

90.     At the time of the defects, Defendants' mesh was being used for the purpose and manner normally intended; specifically, hernia repair.

91.     Defendant's hernia mesh products failed to perform in their intended manner due to a flaw in the manufacturing process.

92.     As a direct and proximate result of the defective and unreasonably dangerous hernia mesh products, Plaintiffs have suffered serious bodily injuries that have resulted in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization,

medical and nursing care and treatment, aggravation of a preexisting condition, and interest on the foregoing injuries.

93.     The foregoing losses and injuries are either permanent or continuing and Plaintiffs will continue to suffer those losses in the future.

**COUNT II**
**STRICT LIABILITY- FAILURE TO WARN**

94.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

95.     The hernia mesh products implanted in Plaintiff were defective and unreasonably dangerous when they left the possession of the Defendant in that they contained warnings which were inadequate and insufficient to alert physicians or consumers to the dangerous risks associated with the product, including, without limitation, extreme pain, risk of malfunction, decreased efficacy, recurrent hernia, perforation of tissue and/or organs, adherence to tissue/organs, infection, nerve damage, subsequent surgeries and other complications.

96.     Defendant Bard's https://products.davol.com/sp/perfix-plug/  for the PerFix™ Plug Mesh does not even have a product brochure accessible.

97.     Defendant Bard's  PerFix™ Light Plug brochure is located on their webpage at https://www.crbard.com/CRBard/media/ProductAssets/DavolInc/PF10157/en-US/a0g9oymtgryi1z27352v3bb4gwl6iffb.pdf  and it does not adequately address the reflect the nature of the injuries that can be sustained, nor the severity of the injuries.

98.     The hernia mesh products implanted in Plaintiff were defective and unreasonably dangerous when the left the possession of the Defendant in that they failed to include proper directions for use, implantation, and/or removal.

14

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 15 of 30 PAGEID #: 186

99.     Defendant's hernia mesh products implanted in Plaintiff were used for their intended purpose, i.e., repair hernias through reinforcement.

100.    Plaintiff's physicians, including the surgeons who performed the implants of the Defendant's hernia mesh products, could not have discovered any defect with the product through the exercise of care.

101.    Plaintiff's physicians, including the surgeons who performed the implants of Defendant's hernia mesh products, did not have substantially the same knowledge that an adequate warning from the manufacturer or a distributor would have communicated.

102.    The warnings that were provided by Defendant regarding their hernia mesh products were ambiguous or were not sufficient, accurate or clear.

103.    The Defendant had a continuing duty to warn Plaintiff and his doctors of the dangers associated with their hernia mesh products. As a direct and legal result of the Defendant's failure to warn, Plaintiff has suffered serious bodily injuries, resulting in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, aggravation of a preexisting condition, and interest on the foregoing. The foregoing losses and injuries are either permanent or continuing and Plaintiff will suffer the losses in the future.

## COUNT III
## NEGLIGENCE

104.    Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

105.    Defendant owed a duty to Plaintiff, and others similarly situated as foreseeable users of their hernia mesh products, to manufacture and sell their products in a reasonably safe manner for its intended use, free from defects.

15

106.    Defendant was negligent in designing, manufacturing, and selling the hernia mesh products by, among other things, failing to properly fabricate the hernia mesh products, failing to adequately test the hernia mesh products, and failing to conduct adequate quality control procedures for the hernia mesh products.

107.    As a direct and proximate result of the Defendant's defective and unreasonably dangerous hernia mesh products, Plaintiff has suffered serious bodily injuries that have resulted in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, aggravation of a preexisting condition, and interest on the foregoing. The foregoing losses and injuries are either permanent or continuing and Plaintiff will suffer the losses in the future.

108.    Defendant owed a duty of care to Plaintiff, to adequately warn against the risks associated with the foreseeable uses about hernia mesh products which the Defendant knew or should have known, including but not limited to: the potential for perforation into human tissue; the potential to erode or "break down"; the potential to decrease in efficacy; the potential to cause patients observable abdominal bulging and pain many months after implantation; the potential for excessive scar tissue formation due to hernia mesh implantation, requiring future excision of scar tissue and lysis of adhesions; the potential for their hernia mesh products to overlie human tissue; muscle loss, weight gain, and/or continuous stomach pain associated with and/or caused by their hernia mesh products; loss of bowel function; increased diarrhea and stool related issues; and loss in mobility.

109.    Any warnings that Defendant may have provided were accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer and/or the medical community.

110.     Defendant breached their duty by failing to adequately warn Plaintiff and/or his physicians and/or the medical community of, inter alia, the aforementioned risks associated with the hernia mesh products, and that failure directly caused Plaintiff's injuries.

## COUNT IV
## BREACH OF WARRANTY

111.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

112.    Defendant impliedly warranted to Plaintiff and all others similarly situated that their hernia mesh products were reasonably fit for its intended use and that it was designed, manufactured, and sold in accordance with good design, engineering, and industry standards.

113.     Defendant's hernia mesh products were defective in their manufacture or design and were therefore, not fit for its intended use and was not designed, manufactured, or sold in accordance with good design, engineering, and industry standards.

114.     Defendant breached the above warranties in that their hernia mesh products were defective as set forth above, were not fit for its intended use and was not designed, manufactured, or sold in accordance with good design, engineering and industry standards. As a direct and proximate result of Defendant's defective and unreasonably dangerous hernia mesh products, Plaintiff has suffered serious bodily injuries that have resulted in pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, aggravation of a preexisting condition, and interest on the foregoing. The foregoing losses and injuries are either permanent or continuing and Plaintiff will suffer the losses in the future.

17

## COUNT V
## PUNITIVE DAMAGES

115.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

116.     Defendant sold their hernia mesh products to the healthcare providers of the Plaintiff and other healthcare providers in the state of Plaintiff's implantation (New York) and throughout the United States without doing adequate testing to ensure that these hernia mesh products were reasonably safe for implantation in the pelvic area.

117.     Defendant sold the hernia mesh products to the Plaintiff's health care providers and other health care providers in the state of the implantation (New York) and throughout the United States despite their knowledge that their hernia mesh products can disintegrate and/or degrade inside the body, and cause the other problems heretofore set forth in this complaint, thereby causing severe and debilitating injuries suffered by Plaintiff and numerous other patients.

118.      Defendant ignored reports from patients and health care providers throughout the United States and elsewhere of their hernia mesh products' failures to perform as intended, which lead to the severe and debilitating injuries suffered by Plaintiff and numerous other patients. Rather than doing adequate testing to determine the cause of these injuries, or to rule out their hernia mesh products' designs or the processes by which their hernia mesh products are manufactured as the cause of these injuries, Defendant chose instead to continue to market and sell their hernia mesh products as safe and effective. Defendant knew their hernia mesh products were unreasonably dangerous in light of their risks of failure, pain and suffering, loss of life's enjoyment, remedial surgeries and treatments in an effort to cure the conditions proximately related to the use of their hernia mesh products, as well as other severe and personal injuries which were permanent and lasting in nature.

18

119.     Defendant withheld material information from the medical community and the public in general, including the Plaintiff, regarding the safety and efficacy of their hernia mesh products.

120.     Defendant knew and recklessly disregarded the fact that their hernia mesh products caused debilitating and potentially life altering complications with greater frequency than feasible alternative methods and/or products used to treat hernias.

121.     Defendant misstated and misrepresented data and continue to misrepresent data so as to minimize the perceived risk of injuries caused by their hernia mesh products.

122.     Notwithstanding the foregoing, Defendant continues to aggressively market the Products to consumers, without disclosing the true risks associated with their hernia mesh products.

123.     Defendant knew of their hernia mesh products' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell these hernia mesh products so as to maximize sales and profits at the expense of the health and safety of the public, including the Plaintiff.

124.     Defendant continues to conceal and/or fail to disclose to the public, including the Plaintiff, the serious complications associated with the use of their hernia mesh products to ensure continued and increased sales of these hernia mesh products.

125.     Defendant's conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

## COUNT VI
## FRADULENT MISREPRESENTATION

126.     Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

127.    Defendant made misrepresentations of material fact from 1993 to present to Plaintiff and

his physicians, to induce them to use the PerFix™ Plug for hernia repair, including:

    a.  Defendant Bard's webpages pertaining to the PerFix™ Plug, located at https://www.crbard.com/davol/en-US/products/PerFix-Plug includes an available "guide" for the public to download, informing readers of the PerFix™ Plug's intended functions as well as Instructions For Use ("IFU"), found here https://www.crbard.com/CRBard/media/ProductAssets/DavolInc/PF10158/en-US/sfjx0s24zg6e6mds2jj3qnhaeyymk4a5.pdf

    b.  Defendant Bard's website explicitly warrants Defendant's device as "A quick and simple preperitoneal underlay Modified Technique for the repair of groin hernias"," "efficient," and "effective." It also displays a chart with a finding of "Strength in Tissue Growth," and provides Product ID.

    c.  Defendant Bard's IFU lacks detailed warning about the known complications associated with the implantation of the PerFix™ Plug but instead pertains very limited and inadequate warnings.

    d.  Defendant Bard's webpage does not include a PDF brochure available for public download for the PerFix™ Plug but instead refers individuals to a related product, the Phasix™ Plug and Patch.

128.    Defendant made misrepresentations of material fact from 2009 to present to Plaintiff and

his physicians, to induce them to use the PerFix™ Light Plug for hernia repair, including:

    a.  Defendant Bard's webpages pertaining to the PerFix™ Light Plug, located at https://www.crbard.com/Davol/en-us/products/perfix-light-plug includes an available "guide" for the public to download, informing readers of the PerFix™ Light Plug's intended functions as well as Instructions For Use ("IFU"), found here https://www.crbard.com/CRBard/media/ProductAssets/DavolInc/PF10157/en-US/6hmtblx6mw1ove2j1vqstry7nr1j0ngo.pdf.

    b.  Defendant Bard's website explicitly warrants Defendant's device as "Trusted," because they claim that the mesh has the same design as the "clinically-proven PerFix™ Plug, which has been used in over 5 million implants worldwide." The website displays an illustration detailing how the mesh is implanted in a "minimally invasive repair that takes 30 minutes to complete," as well as a magnified photograph of the monofilament polypropylene mesh fiber structure.

    c.  Defendant Bard's IFU lacks detailed warning about the known complications associated with the implantation of the PerFix™ Light Plug but instead pertains very limited and inadequate warnings.

    d.  Defendant Bard's webpage includes a PDF brochure available for public download, located at https://www.crbard.com/CRBard/media/ProductAssets/DavolInc/PF10157/en-US/a0g9oymtgryi1z27352v3bb4gwl6iffb.pdf , which displays quotes from surgeons in support of the PerFix™ Light Plug, none of which offer an opinion to the effectiveness of the mesh, rather reiterations of the design already stated by

20

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 21 of 30 PAGEID #: 192

Defendant Bard throughout advertisement materials. The brochure additionally boasts, "long term results report only 18% of patients required prescription pain medication."

129.     Defendant made misrepresentations of material fact from 1993 and 2009, respectively, to present by omitting crucial risks to Plaintiff and his physicians, to induce them to use both the PerFix™ Plug and the PerFix™ Light Plug for hernia repairs, including:

    a.  Mesh materials, as used, react to human tissues, organs and other body contents adversely.
    b.  Mesh materials can harbor or cultivate infections, which can affect surrounding areas, tissue, and organs.
    c.  Mesh material abrades bodily tissue and can cause erosion of tissue and organs surrounding the placement of the mesh implant.
    d.  Mesh components routinely fail, malfunction or lose efficacy, resulting in serious adverse health implications, often requiring subsequent revision or removal surgery.
    e.  Mesh material causes significant injury, extending to perforation of surrounding tissue and/or organs, adhesion to other tissue and/or organs, and nerve damage.
    f.  Mesh material is intended to be rounded and reinforced to be safely cut, but when mesh is defective, it can become frayed, sharp, and protruding.
    g.  Unreasonable risk of malfunction, injury and health consequences, such as: severe chronic pain, infection, adhesion, intestinal blockages, migration of mesh, contraction/shrinkage of mesh, and requirement of repeat surgical intervention.

130.     Defendant made false and misleading representations of the risks of both the PerFix™ Plug and PerFix™ Light Plug in literature distributed to the medical community.

131.     Defendant misrepresented material information regarding both PerFix™ Plug and the PerFix™ Light Plug by failing to disclose the known risks of their Hernia Mesh products and predecessor devices.

132.     Defendant intentionally, willfully, knowingly, and fraudulently misrepresented to the medical community, the FDA, and consumers, including the Plaintiff and his health care providers, that their hernia mesh products had been adequately tested in clinical trials and were found to be safe and effective.

21

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 22 of 30 PAGEID #: 193

133.    Defendant intentionally, willfully, knowingly, and fraudulently misrepresented to the medical community, the FDA, and consumers, including the Plaintiff and his health care providers, that their hernia mesh products had been adequately tested in clinical trials and were found to be safe and effective.

134.    The information distributed by Defendant to the public, including the Plaintiff, the medical community, and the FDA, included, but was not limited to, reports, press releases, advertising campaigns, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth regarding the dangers of the use of Defendant's hernia mesh products.

135.    Product brochures are commonly used by medical device manufacturers and designers, such as Defendant, as advertisement material, and can be used by sellers such as Defendant to communicate terms of warranty to a buyer and can be a presumptive part of the agreement.

136.    Defendant used their product brochures to communicate terms of warranty and representations about their products to its buyers, including but not limited to Plaintiff's physicians and/or medical providers.

137.    Defendant's product brochures do not provide detail about the potential complications associated with their products.

138.    Plaintiff's health care providers and medical facilities relied on the misrepresentations by Defendant in the product brochures and websites.

139.    Defendant made continuous misrepresentations regarding the safety and efficiency of their products to Plaintiff's medical providers and medical facilities through "Dear Doctor" letters, and "Medical Information Letters," and when leaving the following materials for doctors: promotional materials, folders with clinical studies in Defendant's favor, and product samples. Defendant also

made such misrepresentations when hosting dinner events in which they promoted their products, continuing medical education events where they promoted their products, lectures where they promoted their products, and happy hours where they promoted their products. These promotional events occurred from 2006 to the present.

140.    Defendant, as designers and manufacturers of pharmaceutical implant devices, with ample resources and sophistication, had actual knowledge of all risks of both the PerFix™ Plug and the PerFix™ Light Plug, respectively.

141.    Defendant engaged in commercial conduct by selling both the PerFix™ Plug and the PerFix™ Light Plug.

142.    Defendant knew at the time they made their misrepresentations and omissions that they were false.

143.    Defendant intended that Plaintiff would rely on their misrepresentations and omissions.

144.    Given Defendant's ample resources and sophistication as designers and manufacturers of pharmaceutical implant devices, Plaintiff, through his physicians and healthcare providers, and his physicians reasonably relied upon Defendant's misrepresentations and omissions regarding the safety and efficacy of Defendant's hernia mesh products, resulting in Plaintiff sustaining permanent personal injuries and damages.

145.    In reliance upon Defendant's false and fraudulent misrepresentations, through his physicians and healthcare providers, the Plaintiff was induced to, and did, reasonably rely upon Defendant's misrepresentations and omissions regarding the safety and efficacy of Defendant's hernia mesh products, resulting in Plaintiff sustaining permanent personal injuries and damages.

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 24 of 30 PAGEID #: 195

146.    Defendant had sole access to material facts concerning the defective nature of their hernia mesh products and its propensity to cause serious and dangerous injuries and damages to persons who used their hernia mesh products.

147.    Defendant had sole access to material facts concerning the defective nature of the products and their propensities to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with both the PerFix™ Plug and the PerFix™ Light Plug.

148.    Defendant knew, and had reason to know, that their hernia mesh products could cause serious personal injury to those who received an implant, and that their hernia mesh products were inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings given.

149.    Defendant made fraudulent misrepresentations and omissions intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of their product, including Plaintiff.

150.    Defendant made fraudulent misrepresentations and omissions intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of their product, including Plaintiff.

151.    Defendant's wrongful conduct was fraudulent, deceitful, committed and perpetrated willfully, wantonly, and purposefully.

152.    Defendant's fraudulent misrepresentations and omissions were made with the intent of defrauding and deceiving the medical community and the public, including Plaintiff, and to induce the medical community to recommend, dispense and purchase Defendant's hernia mesh products.

153.    As a foreseeable, direct, and proximate result of Defendant's described misrepresentations and omissions, Plaintiff suffered the serious and dangerous side effects more specifically described in this Complaint.

154.    As a direct and proximate consequence of Defendant's fraudulent misrepresentations, Plaintiff sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

155.    Plaintiff incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

156.    Defendant had a duty to represent truthfully and accurately to the medical community, the FDA, and United States consumers accurately and truthfully, including Plaintiff, the results of Defendant's hernia mesh products testing. The misrepresentations made by Defendant was false; Defendant was careless or negligent in ascertaining the truth of the representations at the time Defendant made the misrepresentations.

157.    Defendant represented and marketed their hernia mesh products as being safe and effective.

158.    After Defendant became aware of the risks of their hernia mesh products, Defendant failed to accurately communicate those risks associated with their products.

159.    Defendant failed to exercise ordinary care in the representation concerning their products and its manufacture, sale, testing, quality assurance, quality control, and distribution. Defendant negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the

25

Case: 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 26 of 30 PAGEID #: 197

high risk of the product's unreasonable, dangerous, and adverse side effects associated with the administration, use, and implantation of the product.

160.    Defendant breached their duty in representing to the Plaintiff, their physicians and healthcare providers, and the medical community as a whole, that their hernia mesh products did not carry the risk of serious side effects such as those suffered by Plaintiff and other similarly situated patients.

161.    Plaintiff, and his healthcare providers, physicians, and surgeons justifiably relied on Defendant negligent misrepresentations.

162.     As a direct and proximate consequence of Defendant negligent misrepresentations, Plaintiff sustained serious personal injuries, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

## COUNT VIII
## UNJUST ENRICHMENT

163.    Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

164.    Defendant is, and at all times were, the manufacturers, sellers, suppliers, distributors, marketers, and/or dealers of both the PerFix™ Plug and the PerFix™ Light Plug.

165.    Plaintiffs paid for Defendant's hernia mesh product for the purpose of hernia repair.

166.    Defendant has accepted payment by Plaintiffs for the purchase of their hernia mesh products.

167.    Plaintiffs have not received the safe and effective hernia mesh products for the hernia repair material for which they paid.

## COUNT IX
## CONSUMER FRAUD- VIOLATION OF GBL §349 and §350

168.    Plaintiff incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

169.    The Defendant acted, used and employed unconscionable commercial practices, deception, fraud, false pretenses, false promises and misrepresentations, and knowingly concealed, suppressed and omitted material facts with the intent that consumers, including Plaintiff herein and Plaintiff's physicians and medical providers, rely upon such concealment, suppression and omission, in connection with sale, advertisement and promotion of their hernia mesh products (both the PerFix™ Plug and the PerFix™ Light Plug), in violation of all applicable state consumer fraud statutes, for the purpose of influencing and inducing physicians and medical providers to implant the Defendant's hernia mesh products (both the PerFix™ Plug and the PerFix™ Light Plug) to patients/consumers such as the Plaintiff herein. Because of the Defendant's unconscionable, deceptive and fraudulent acts and practices, and false pretenses, false promises and misrepresentations, reasonable patients/consumers acting reasonably, such as the Plaintiff herein, were caused to suffer ascertainable loss of money and property and actual damages.

170.    Defendant engaged in consumer-oriented, commercial conduct by selling and advertising the subject product.

171.    Defendant misrepresented and omitted material information regarding the subject product by failing to disclose known risks.

172.    Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others

FILED: NEW YORK COUNTY CLERK 02/27/2018 11:22 AM          INDEX NO. 151747/2018

NYSCEF DOC. NO. 1          Case 2:18-cv-00873-EAS-KAJ Doc #: 20 Filed: 01/04/19 Page: 28 of 30 PAGEID #: 199          RECEIVED NYSCEF: 02/27/2018

rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product, in violation of New York General Business Law ("GBL") §§ 349 and 350.

173.    New York has enacted statutes to protect consumers from deceptive, fraudulent and unconscionable trade and business practices. Defendant violated these statutes by knowingly and falsely representing that the subject products were fit to be used for the purpose for which it was intended, when the Defendant knew said products were defective and dangerous, and by other acts alleged herein.

174.    Defendant engaged in the deceptive acts and practices alleged herein in order to sell the subject products to the public, including Plaintiff.

175.    As a direct and proximate result of the Defendant's violations of GBL §349 and §350, Plaintiff suffered damages, for which Plaintiff are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

176.    As a direct and proximate result of Defendant's conduct, the Plaintiff used and/or had the hernia mesh products at issue (both the PerFix™ Plug and the PerFix™ Light Plug) and Plaintiff suffered serious physical injury, harm, and damages.

177.    Defendant's action and omission as alleged in this Complaint demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

178.    This action falls within one or more of the exceptions set forth in CPLR 1602, and as such the Defendant is liable pursuant to the exceptions set forth in Article 16 of the C.P.L.R.

179.    Pursuant to C.P.L.R Section 1602(2)(iv), Defendant is jointly and severally liable for all of Plaintiff's damages, including but not limited to, Plaintiff's non-economic loss, irrespective of the provisions of C.P.L.R. Section 1601, by reason of the fact that Defendant owed Plaintiff a non-delegable duty of care.

180.     Pursuant to C.P.L.R. Section 1602(2)(iv), Defendant is liable for all of Plaintiff damages, including but not limited to, Plaintiff non-economic loss, irrespective of the provisions of C.P.L.R. Section 1601, by reason of the fact that said Defendant is vicariously liable for the negligent acts and omissions of its servants, agents, affiliated physicians, surgeons and/or employees.

181.   Pursuant to C.P.L.R. Section 1602(7), Defendant is jointly and severally liable for all of Plaintiff's damages, including but not limited to Plaintiff's non-economic loss, irrespective of the provisions of C.P.L.R. Section 1601, by reason of the fact that said Defendant acted with reckless disregard for the safety of others.

182.     By reason of the foregoing, Plaintiff has been damaged in an amount that exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction in this matter.

       **WHEREFORE**, Plaintiff demands judgment against the Defendant herein in an amount that exceeds the jurisdictional limitations of all lower courts that would otherwise have jurisdiction over this action, together with the interest, costs and disbursements of same allowed by law.

Dated:       New York, New York
             February 5, 2018

                                        MARC J. BERN &PARTNERS LLP
                                        Attorneys for Plaintiff

                                        _Alexandra Colella_
                                        _____

                                        Alexandra Colella, Esq.

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK    )
                         ) ss:
COUNTY OF NEW YORK  )

ALEXANDRA COLELLA, an attorney and counselor at law, duly admitted to practice in

the Courts of the State of New York and a member of the firm, MARC J. BERN & PARTNERS

LLP, attorneys for Plaintiff herein, affirms the following to be true under penalties of perjury:

I have read the foregoing VERIFIED COMPLAINT and know of the contents thereof, and

upon information and belief, I believe the matters alleged therein to be true.

The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff resides

in a county other than the one in which your deponent's office is maintained. The source of your

deponent's information and the grounds of by belief are communications, papers, reports and

investigations contained in my file.

Dated:  New York, New York
          February 27, 2018

**MARC J. BERN & PARTNERS LLP**
*Attorneys for Plaintiff*

By: _____
Alexandra Colella, Esq.
One Grand Central Place
60 East 42nd Street, Suite 950
New York, New York 10165
(212) 702-5000